IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

UNITED STATES OF AMERICA

vs.                                                                  CASE NO.: 4:04cr12-SPM

DWIGHT DAVID SANDERS,

      Defendant.

_____/

## ORDER ON APPEAL

Dwight David Sanders was charged with forcibly assaulting, resisting, opposing, impeding, intimidating, and interfering with an officer of the United States Forest Service, in violation of 18 U.S.C. § 111(a)(1). He consented to a non-jury trial of his case by a magistrate judge, who found him guilty and imposed a 10-month sentence in accordance with the United States Sentencing Guidelines.

On appeal, Mr. Sanders argues that his sentence should be reversed because the facts of his case do not support a 3-level enhancement under section 2A2.4(b)(1) of the sentencing guidelines for conduct involving physical contact. Mr. Sanders also argues that the magistrate judge applied the wrong burden of proof in applying the enhancement. Reversal of the sentence is not warranted on either of these grounds because the magistrate judge properly applied the 3-level enhancement. Because, however, Mr. Sanders was

sentenced under a mandatory sentencing guideline scheme, he is entitled to be resentenced.

## I.     BACKGROUND

At trial, only two witnesses testified.  Officer Sean Hyrons of the United States Forrest Service testified about his arrest of Mr. Sanders.  Mr. Sanders also testified concerning the circumstances of his arrest.  Their testimony differed significantly.

### A.     Officer Hyrons' Testimony

According to Officer Hyrons, he stopped Mr. Sanders' truck at approximately 8:15 p.m. on November 29, 2003 because of a bad tag light.  Mr. Sanders was traveling with a dog inside the truck.  Upon stopping, Mr. Sanders exited his truck and appeared to place something under the seat.  Officer Hyrons obtained consent from Mr. Sanders to search the truck.  Since the dog was barking and growing at Officer Hyrons, Mr. Sanders removed the dog so Officer Hyrons could conduct the search.

Inside, Officer Hyrons noticed a strong odor of alcohol and found an open container of beer.  Officer Hyrons asked Mr. Sanders for his driver's license, registration, and proof of insurance, but Mr. Sanders produced only his driver's license.  Officer Hyrons took Mr. Sanders licence and told Mr. Sanders he would return shortly.  He instructed Mr. Sanders to stand at the rear of the truck and to remain there.  Officer Hyrons walked to his vehicle to run a teletype check on the license.  When Officer Hyrons reached his vehicle, he noticed Mr. Sanders had

run into the woods.

Officer Hyrons caught up with Mr. Sanders approximately 25 yards into the woods.  He told Mr. Sanders to stop resisting and go to the ground.  When Mr. Sanders refused to comply, Officer Hyrons attempted to grab Mr. Sanders.  Officer Hyrons stumbled and they both fell to the ground.  At that point, Mr. Sanders attempted to strike Officer Hyrons using his left hand and elbow.  Mr. Sanders got up and continued to run.  As Officer Hyrons again chased Mr. Sanders, Officer Hyrons pulled out his baton and attempted without success to strike Mr. Sanders in the right calf.  As he continued to chase, Officer Hyrons grabbed Mr. Sanders from behind once again, but Mr. Sanders pulled away.  Officer Hyrons used his pepper spray, but it blew back into his face.

Mr. Sanders continued running as Officer Hyrons finally caught up and grabbed Mr. Sanders.  Mr. Sanders struggled and pushed back with his body and his elbows against Officer Hyrons.  Officer Hyrons pushed Mr. Sanders to the ground.  When it appeared that Mr. Sanders was attempting to get back up, Officer Hyrons sprayed Mr. Sanders in the face with pepper spray.  Thereafter, Mr. Sanders complied with Officer Hyrons' instructions.  Officer Hyrons issued citations to Mr. Sanders for unregistered vehicle, attached tag not assigned, no proof of insurance, open container, driving while license suspended, and for resisting a federal law enforcement officer.

At the request of Mr. Sanders, Officer Hyrons called Mr. Sanders' cousin to pick up the dog and the truck.  The dog had been standing near the front of the

truck, but Officer Hyrons allowed Mr. Sanders to call the dog into the truck.  The

cousin arrived to take the truck and dog.  At no time, according to Officer Hyrons,

did the dog try to attack him.

### B.    Mr. Sanders' Testimony

According to Mr. Sanders, he exited his truck when Officer Hyrons

stopped him because he did not want his dog to jump out as Officer Hyrons

approached.  Officer Hyrons first asked Mr. Sanders for his driver's license,

registration, and insurance.  Mr. Sanders gave the officer his driver's licence and

a bill of sale for the truck.  Mr. Sanders explained that the tag was not assigned

to the vehicle, but he had just gotten the truck running.  It was the Saturday after

the Thanksgiving holiday and Mr. Sanders planned to get a tag on Monday.

Officer Hyrons returned to his vehicle to run Mr. Sanders' license and

discovered it was suspended.  Upon his return, Officer Hyrons asked Mr.

Sanders if Mr. Sanders had been drinking.  When Mr. Sanders said no, Officer

Hyrons, who was standing by the truck and shining a flashlight into it, noted that

there was beer on the floorboard of the truck.  Mr. Sanders told Officer Hyrons

that there was an open container behind the seat, too, which a relative had left in

the truck earlier.

Officer Hyrons told Mr. Sanders to remain at the back of the vehicle while

he searched the truck.  Although Mr. Sanders consented to the search, he tried

to persuade Officer Hyrons to allow him to remove his dog.  Officer Hyrons

refused, saying "I'll take care of that damned dog."  Transcript of Trial, doc. 33 at

39.

When Officer Hyrons opened the truck door to conduct the search, the

dog jumped out and attacked Officer Hyrons.  Mr. Sanders lunged in an attempt

to catch his dog, but Officer Hyrons appeared to get the wrong idea.  According

to Mr. Sanders, "Everything just went haywire."  Id. at 40.

Officer Hyrons told Mr. Sanders to get the dog "or he'd blow [its] brains

out[,]" which scared Mr. Sanders.  Id.  Mr. Sanders feared Officer Hyrons would

shoot his dog.  Officer Hyrons was swinging at Mr. Sanders with his baton and

trying to get his gun out.  The dog was trying to bite Officer Hyrons.  Mr. Sanders

was trying to get his dog and to avoid being injured by Officer Hyrons.  Officer

Hyrons was trying to effect an arrest of Mr. Sanders and to keep the dog off of

him.  Mr. Sanders testified, "I was under physical attack, me and my dog."  Id. at

44.  Mr. Sanders testified that if Officer Hyrons had let Mr. Sanders control the

dog first, none of this would have occurred.

Upon being asked by the magistrate judge how during the incident Officer

Hyrons was able to complete a search of the truck, Mr. Sanders explained that

after the dog jumped out and attacked Officer Hyrons, Mr. Sanders took the dog

to the back of the truck.  Mr. Sanders then welcomed Officer Hyrons to search

the vehicle.  When Officer Hyrons finished and walked by, the dog took after

Officer Hyrons.

### C.    Judge's Finding of Guilt

The magistrate judge found Mr. Sanders guilty.  He explained that Mr.

Sanders' story did not make sense in two regards.  First, if Mr. Sanders could

exert control over his dog after it first attacked Officer Hyrons, he doubted the

dog could attack Officer Hyrons again.  Second, if Officer Hyrons was attempting

to hit the dog with his baton, Officer Hyrons would not at the same time be

overpowering Mr. Sanders.  The magistrate judge credited Officer Hyrons'

version of events over Mr. Sanders'.

## II.    DISCUSSION

Before Mr. Sanders' sentence was imposed, the United States Supreme

Court issued its opinion in Blakely v. Washington, 524 U.S. 296 (2004), which

held that a finding of fact cannot be used to increase a maximum sentence

unless the fact is proven to a jury beyond a reasonable doubt or admitted by the

defendant.  Blakely, 524 U.S. at 301-04.  The Court clarified that a maximum

sentence for purposes of its opinion "is not the maximum sentence a judge may

impose after finding additional facts, but the maximum he may impose *without*

any additional findings."  Id. at 304.

Citing to Blakely, at sentencing Mr. Sanders objected to the application of

a three-level enhancement under the United States Sentencing Guidelines

section 2A2.4(b)(1) that applies if the offense involves physical contact.[1]  The

enhancement increased Mr. Sanders' guideline range, which before the

--------

[1] Section 2A2.4.(b)(1) of the United States Sentencing Guidelines
provides: "If (A) the offense involved physical contact; or (B) a dangerous
weapon (including a firearm) was possessed and its use was threatened,
increase [the base offense level] by **3** levels."

enhancement was 2 to 8 months in Zone B[2] and after the enhancement was 8 to

14 months in Zone C[3].

Mr. Sanders argued that the facts of his case did not support application of

the enhancement for physical contact because the only physical contact was

incidental and initiated by Officer Hyrons.  Mr. Sanders also argued that in

accordance with <u>Blakely</u>, the proper standard of proof for applying the

enhancement was beyond a reasonable doubt, as opposed to the

preponderance of the evidence standard that was previously adopted for use

---

[2] With regard to Zone B, the United States Sentencing Guidelines at section 5C1.1(c) provides:
>    If the applicable guideline range is in Zone B of the Sentencing
>    Table, the minimum term may be satisfied by –
>    (1)    a sentence of imprisonment; or
>    (2)    a sentence of imprisonment that includes a term of
>           supervised release with a condition that substitutes
>           community confinement* or home detention according to the
>           schedule in subsection (e), provided that at least one month
>           is satisfied by imprisonment; or
>    (3)    a sentence of probation that includes a condition or
>           combination of conditions that substitute intermittent
>           confinement, community confinement, or home detention for
>           imprisonment according to the schedule in subsection (e).

[3] With regard to Zone C, the United States Sentencing Guidelines at section 5C1.1(d) provides:
>    If the applicable guideline range is in Zone C of the Sentencing
>    Table, the minimum term may be satisfied by –
>    (1)    a sentence of imprisonment; or
>    (2)    a sentence of imprisonment that includes a term of
>           supervised release with a condition that substitutes
>           community confinement* or home detention according to the
>           schedule in subsection (e), provided that at least one-half of
>           the minimum term is satisfied by imprisonment.

with the Sentencing Guidelines[4].

The magistrate judge accepted Mr. Sanders' position on <u>Blakely</u> by treating the enhancement for physical contact as if it were an element of the offense and therefore subject to being charged and proven beyond a reasonable doubt.  The magistrate judge noted that the use of force was charged in the information.  He stated that "the allegation of forcible assault, in my mind, and as a matter of law, must involve physical contact. . . . So I believe the information properly charged the element that is intended by the guidelines 2A2.4(b)(1), and that says, if the conduct – if the conduct involved physical contact.  That's all it says, just physical contact."  Transcript of Sentencing, doc. 34 at 8.

With regard to the facts of the case to support the enhancement, the magistrate judge stated that "this could have been simply a chase through the woods without any physical contact. . . .  But I think it became forcible assault at the time that there was physical contact."  <u>Id.</u> at 9.  The magistrate judge found that the facts of the case were similar to other cases where the sentencing enhancement was applied to prisoners who opposed or resisted arrest by engaging in physical struggle before being overpowered and restrained.  <u>See</u> <u>United States v. Collins</u>, 937 F.2d 617(10th Cir. 1991) (unpublished opinion); <u>United States v. Hill</u>, 996 F.2d 1228 (9th Cir. 1993) (unpublished opinion).

It appears, therefore, that the magistrate judge actually used a reasonable

---

[4]  <u>See</u> <u>United States v. Alston</u>, 895 F.2d 1362, 1373 (11th Cir. 1990) (adopting preponderance standard for guideline sentencing).

doubt standard in finding that the enhancement applied.  To the extent that the

magistrate judge used a lesser evidentiary standard, however, there is no error.

The preponderance of the evidence standard continues to be the appropriate

standard for fact-finding under the sentencing guidelines.  See United States v.

Moriarty, 429 F.3d 1012, 1022 (11th Cir. 2005).

Furthermore, the record supports the magistrate judge's application of the

enhancement.  Mr. Sanders, during the course of his escape, attempted to strike

Officer Hyrons with his left hand and elbow.  Mr. Sanders also pushed his body

and elbows against Officer Hyrons as he struggled to avoid being subdued.  The

physical contact was not solely initiated by Officer Hyrons; nor was it merely

incidental.  The record shows that while Officer Hyrons grabbed Mr. Sanders in

an attempt to subdue him, Mr. Sanders was forcibly struggling back.  Mr.

Sanders' own physical actions to avoid being subdued warrant application of the

enhancement.  The magistrate judge did not err in applying the enhancement.

Mr. Sanders' sentence, nevertheless, must be reversed and remanded for

resentencing under the now-advisory sentencing guidelines in light of United

States v. Booker, 434 U.S. 2002 (2005).  Although Booker was decided after Mr.

Sanders was sentenced, the decision applies retroactively to cases pending on

direct appeal.  Id. at 267.   The Booker issue was sufficiently raised in Mr.

Sanders' initial brief.  See United States v. Levy, 416 F.3d 1273, 1279 (11th Cir.

2005) (construing liberally what it means to raise a Booker-type issue on appeal).

The issue, furthermore, was preserved below through Mr. Sanders' argument

that "a sentencing enhancement must be proved beyond a reasonable doubt." United States v. Munoz, 430 F.3d 1357, 1374 (11th Cir. 2005).

An error under Booker occurs when a defendant is sentenced under a mandatory guideline scheme. United States v. Shelton, 400 F.3d 1325, 1330-31 (11th Cir. 2005). Mr. Sanders was sentenced under a mandatory guideline scheme. It is not clear that the same sentence would have been imposed had the sentencing guidelines been advisory rather than mandatory. The error, therefore, cannot be deemed harmless.

Accordingly, Mr. Sanders' sentence is vacated and remanded for resentencing in light of the United States Supreme Court's decision in Booker. At resentencing, the court may choose to impose the same sentence that it originally imposed, or a different sentence, so long as the sentencing guidelines are deemed advisory.

SO ORDERED this 18th day of May, 2006.

_s/ Stephan P. Mickle_

Stephan P. Mickle
United States District Judge